# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE SOFTWARE PUBLISHERS ASSOCIATION, d/b/a/ THE SOFTWARE & INFORMATION INDUSTRY ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>MICHAEL MARCHESANO AND OUTSELL, INC.,<br><br>*Defendants*. | Civil Action No.:<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## COMPLAINT

For its Complaint against Defendant Michael Marchesano (hereinafter "Marchesano") and Defendant Outsell, Inc. ("Outsell," and collectively with Marchesano, "Defendants"), Plaintiff The Software & Information Industry Association ("SIIA" or "Plaintiff"), by counsel, states as follows:

## INTRODUCTION

1. This is the story of a senior employee who committed a grave breach of trust. Michael Marchesano was the Managing Director of the Connectiv Division and Association Media & Publishing Division at SIIA, a renowned private trade organization in the software field. Marchesano had worked at SIIA for over six years, after being hired on October 14, 2013. In late 2018, after being notified that he was not selected to serve as SIIA's President, Marchesano embarked on a scheme to convert SIIA's valuable customer base from SIIA's Connectiv Division to SIIA's competitor, Outsell.

2. Before resigning from SIIA on December 18, 2019 for a position as president of Outsell, Marchesano sent to his personal email account at least two documents containing sensitive

and trade secret information about the Connectiv Division's membership dues and business operations. The intent of these documents is unmistakable – both documents were created by Marchesano months before he resigned from SIIA, and contain detailed plans outlining how Outsell might capture hundreds of thousands of dollars in annual membership dues currently paid by members of SIIA's Connectiv Division.

3. The documents integrated SIIA's confidential information with Outsell's own existing pricing for specific companies, and described how Outsell could capture the revenue SIIA received from these members.

4. Outsell's pricing schemes and charges to specific companies are not generally publicly available.

5. Marchesano collected and sent this information to his and his wife's personal email accounts while an employee of SIIA, while using SIIA's equipment, and while bound by SIIA's confidentiality policy, which prohibits the disclosure of such confidential information. Marchesano was well aware of both antitrust laws and SIIA's commitment to said laws, through statements made at the opening of all SIIA board meetings, which he attended during his employment.

6. Given Marchesano's calculated collection and appraisal of SIIA's confidential information months before his resignation, it is apparent that Marchesano and Outsell conspired for some months to obtain SIIA's confidential information before Marchesano resigned from SIIA for a position at Outsell.

7. On or about the week of December 16, 2019, Marchesano attempted to delete thousands of emails from his SIIA account.

8. Concerned by the impact of Marchesano's breach of SIIA policy, misappropriation and by the wrongdoing, breach of trust, and lack of fair dealing demonstrated by Marchesano and Outsell, SIIA brings this suit to hold Marchesano and Outsell accountable for their actions.

## PARTIES

9. SIIA is, and at all times pertinent hereto was, a private trade organization headquartered in and operating out of Washington, D.C. Its principal place of business is 1090 Vermont Avenue NW Suite #600, Washington, D.C. 20005.

10. Upon information and belief, Marchesano is an individual residing in New York State.

11. Outsell is, and was at all times pertinent hereto, a for-profit corporation headquartered in Burlingame, California. Its principal place of business is 330 Primrose Road #510, Burlingame, CA 94010.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action because it involves federal questions that arise under the Defend Trade Secrets Act of 2016, as Defendant misappropriated Plaintiff's trade secrets. *See* 18 U.S.C. §1836 ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section.").

13. This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the District of Columbia pursuant to 28 U.S.C. §1367(a), because these claims are so related to claims within the Court's original jurisdiction and form part of the same case or controversy.

14. This Court has personal jurisdiction over this action because Plaintiff's business is located within this judicial district; Defendant Marchesano, as a former employee of Plaintiff, frequently conducted business within this judicial district; and a substantial part of the events and harm giving rise to the claims set forth in this Complaint occurred in this District.

15. This Court has personal jurisdiction over Defendants because Defendants should have reasonably known that their unlawful conduct in the District of Columbia would cause harm within the District.

16. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) and (c)(2) because a substantial part of the events or omissions giving rise to the claims at issue occurred in the District of Columbia, and Plaintiff's principal place of business is the District of Columbia.

## FACTS

17. Founded in 1984, the Software & Information Industry Association is the principal trade association for the software and digital content industry. SIIA provides global services in government relations, business development, corporate education, and intellectual property protection to the leading companies that are setting the pace for the digital age. SIIA is organized into eight "divisions," two of which are the Connectiv Division and Association Media & Publishing Division.

18. Until December 18, 2019, Michael Marchesano was employed with SIIA as Managing Director of the SIIA's Connectiv Division and Association Media & Publishing Division. As a Managing Director at SIIA, Marchesano had unrestricted access to SIIA's systems, premises, and documents as well as intimate knowledge of SIIA's official personnel policies and procedures.

19. In late 2018, Marchesano sought the role of President at SIIA. His application for the position was not successful. Disgruntled by this rejection, Marchesano resigned on December 18, 2019 and subsequently began employment as president of Outsell, Inc., a for-profit corporation that is a direct competitor of SIIA and was once a member of SIIA's Connectiv Division.

20. SIIA terminated Marchesano's system and file access the same day he resigned, December 18, 2019. However, a scan of Marchesano's SIIA email account, post-resignation, revealed two alarming documents from mid-November 2019.

21. The first document was a spreadsheet created by Marchesano on October 5, 2019 and last modified by Marchesano on November 17, 2019. This spreadsheet contains detailed, confidential information about the dues paid by SIIA members. This spreadsheet also lists proposed dues levels that SIIA members would pay if they joined Outsell, instead.

22. A note on this spreadsheet states: "Reviewing current Connectiv dues versus Outsell, [a material amount] potentially could transfer into Outsell pricing and service offerings through the OLL package . . . [hundreds of thousands of dollars in annual dues] in current Connectiv has been estimated for conversion."

23. The second document, entitled "New Opportunity" is a detailed memorandum that describes how Outsell could capture and convert "100% of the revenue" discussed in detail in the document and currently earned by SIIA's Connectiv Division through member dues. This document was created by Marchesano on November 16, 2019.

24. SIIA subsequently discovered that Marchesano sent these two documents from his SIIA email account to both a gmail account that appears to be held by his wife and to his personal gmail account, mikemarchesano1@gmail.com.

25. SIIA considers its dues information to be trade secret information. This information is neither known by nor disclosed to the general public, and SIIA takes great care to ensure that this information is not readily accessible, as SIIA uses a password-protected system that provides access only to SIIA employees and those who have expressly signed confidential information waivers.

26. From the content of these documents, it is apparent that Marchesano was preparing to leave SIIA for Outsell at least as early as October 5, 2019, and that Marchesano purposely misappropriated SIIA's confidential and trade secret information before he left SIIA for a new position as president of Outsell.

27. SIIA's employment manual, to which Marchesano was a party, expressly prohibits disclosure of "confidential information," including "member information," "member business information," and "financial operations:"

> 4.9. Confidential Information: Employees agree to hold all "Confidential Information" in strictest confidence, to use "Confidential Information" solely for purposes related to SIIA, and to limit disclosure to those who have the necessary authorization, both during and subsequent to employment with SIIA. Failure to do so may result in dismissal and SIIA will be entitled to injunctive relief or decrees for specific performance, or both, as well as any other relief as may be proper.
>
> "Confidential Information" is information owned by SIIA or its members, or entrusted to it, that derives actual or potential independent economic value to the owner of such information by reason of not being generally known to the public.
>
> "Confidential Information" includes, but is not limited to: know-how, software programs, schematics, source documents, contracts, member information, member business information, financial operations or personnel information, product/program development, marketing plans, business plans, publications, positions, governance, policies or procedures, and past, present or pending anti-piracy matters.
>
> "Confidential Information" does not include any information that has been made generally available to the public.
>
> When employment ends or at any other time upon SIIA's request, the employee will promptly deliver, without keeping any copies, all documents and other materials received or prepared in connection with work for SIIA.

28. Notably, Marchesano did not return the two documents or notify SIIA of their existence when he resigned on December 18, 2019, nor has he since made any such return or disclosure.

## COUNT I– BREACH OF FIDUCIARY DUTY
### (Against Marchesano)

29. Paragraphs 1-28 above are re-alleged and incorporated as if fully set forth herein.

30. As a senior employee at SIIA, Marchesano had a special trust relationship with SIIA and owed fiduciary duties to SIIA during the term of his employment, including the duty of loyalty.

31. Marchesano breached his fiduciary duty of loyalty to SIIA by engaging in activities to compete against SIIA while employed with SIIA. Specifically, Marchesano misappropriated SIIA's confidential, proprietary, and trade secret information while employed by SIIA for use as president at Outsell after resigning from SIIA, as alleged herein.

32. As a senior employee at SIIA and an employee of SIIA for over six years, Marchesano was unquestionably aware that his actions were a severe breach of the duty of loyalty and would cause SIIA harm.

33. As a result of Marchesano's breach of his fiduciary duties, SIIA will suffer irreparable harm and damages in an amount to be proven at trial.

## COUNT II – BREACH OF CONTRACT
### (Against Marchesano)

34. Paragraphs 1-33 above are re-alleged and incorporated as if fully set forth herein.

35. As an employee of SIIA, Marchesano was a party to the policies set forth in SIIA's employment manual.

36. Among these policies was a provision prohibiting disclosure of "confidential information," including "member information," "member business information," and "financial operations."

37. SIIA clearly and definitively intended this provision to be a condition of Marchesano's employment with SIIA, and considered the provision necessary to protect its business interests in its confidential information. Marchesano received valuable consideration from SIIA, including employment, compensation, and other benefits, in exchange for agreement to this provision.

38. Marchesano breached the employment policy by misappropriating SIIA's confidential information and by failing to return this information or disclose his possession of it.

39. As a result of this breach, SIIA has suffered and will suffer damages.

### COUNT III – TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ.
### (Against Marchesano and Outsell)

40. Paragraphs 1-39 above are re-alleged and incorporated as if fully set forth herein.

41. Marchesano and Outsell used improper means to acquire SIIA's trade secret information. Marchesano wrongfully obtained private copies of SIIA's trade secret information by emailing himself documents that contained SIIA's confidential, proprietary, and trade secret information.

42. On information and belief, Marchesano took these actions in concert with, at the direction of, and for the benefit of SIIA's direct competitor, Outsell, with the intention of disclosing SIIA's confidential, proprietary, and trade secret information to Outsell.

43. The trade secret information that Defendants misappropriated is not generally known to the public, and indeed, SIIA takes reasonable efforts to protect it from public disclosure, including implementing a password-protected system that only employees and those who expressly sign confidentiality waivers have access to.

44. SIIA spent significant time and expense to create the trade secret information that Defendants misappropriated, and it derives independent economic value from its secrecy. For example, the information Defendants misappropriated include detailed information about the membership dues actually paid by SIIA's Connectiv Division members. In the hands of Outsell, SIIA's competitor, this information could be used to gain an unfair competitive advantage – and indeed, appears to have been misappropriated for that very purpose.

45. Defendants acted willfully and maliciously in misappropriating SIIA's trade secret information.

46. As a result of Defendants willful and malicious misappropriation of SIIA's trade secret information, SIIA has suffered damages and irreparable harm through lost profits and/or unjust enrichment that may not be reasonably calculable.

47. Further, any continued or future efforts by Defendants to unlawfully use or disclose SIIA's trade secret information will cause additional irreparable harm, including through lost business opportunities, loss of goodwill and harm to its business reputation.

### COUNT IV – TRADE SECRET MISAPPROPRIATION UNDER THE DISTRICT OF COLUMBIA UNIFORM TRADE SECRETS ACT, D.C. CODE §36-401, ET SEQ.
### (Against Marchesano and Outsell)

48. Paragraphs 1-47 above are re-alleged and incorporated as if fully set forth herein.

49. Marchesano and Outsell used improper means to acquire SIIA's trade secret information. Marchesano wrongfully obtained private copies of SIIA's trade secret information by emailing himself documents that contained SIIA's confidential, proprietary, and trade secret information.

50. On information and belief, Marchesano took these actions in concert with, at the direction of, and for the benefit of SIIA's direct competitor, Outsell, with the intention of disclosing SIIA's confidential, proprietary, and trade secret information to Outsell.

51. The trade secret information that Defendants misappropriated is not generally known to the public, and indeed, SIIA takes reasonable efforts to protect it from public disclosure, including implementing a password-protected system that only employees and those who expressly sign confidentiality waivers have access to.

52. SIIA spent significant time and expense to create the trade secret information that Defendants misappropriated, and it derives independent economic value from its secrecy. For example, the information Defendants misappropriated include detailed information about the membership dues of SIIA's Connectiv Division members. In the hands of Outsell, SIIA's competitor, this information could be used to gain an unfair competitive advantage – and indeed, appears to have been misappropriated for that very purpose.

53. Defendants acted willfully and maliciously in misappropriating SIIA's trade secret information.

54. As a result of Defendants willful and malicious misappropriation of SIIA's trade secret information, SIIA has suffered damages and irreparable harm through lost profits and/or unjust enrichment that may not be reasonably calculable.

55. Further, any continued or future efforts by Defendants to unlawfully use or disclose SIIA's trade secret information will cause additional irreparable harm, including through lost business opportunities, loss of goodwill and harm to its business reputation.

### COUNT V – COMMON LAW CONSPIRACY
### (Against Marchesano and Outsell)

56. Paragraphs 1-55 above are re-alleged and incorporated as if fully set forth herein.

57. Defendants agreed to undertake efforts to willfully and maliciously harm SIIA's business interests by misappropriating SIIA's trade secret information.

58. Defendants took these actions with the specific intent to harm and interfere with SIIA's businesses and unfairly and unlawfully increase Outsell's competitive position in respect to SIIA in the marketplace.

59. On information and belief, Defendants took these actions to aid and further a conspiracy between themselves to undercut SIIA's position in the marketplace.

60. As a result of Defendants' willful and malicious actions to unlawfully conspire against SIIA, SIIA has suffered damages in an amount to be determined at trial, including but not limited to business disruption, lost business, and prospective business.

61. Further, any continued or future efforts by Defendants to unlawfully conspire or interfere with SIIA's business operations will cause irreparable harm to SIIA, including through lost business opportunities, loss of goodwill and harm to its business reputation.

## COUNT VI – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AND ECONOMIC ADVANTAGE
### (Against Marchesano and Outsell)

62. Paragraphs 1-61 above are re-alleged and incorporated as if fully set forth herein.

63. SIIA has numerous agreements with its Connectiv members whereby members pay SIIA regular dues in return for the services offered by the Connective Division.

64. As the Managing Director of the Connectiv Division, Marchesano was uniquely positioned to be aware of these agreements and resulting business relationships.

65. By misappropriating SIIA's trade secret membership dues, Defendants unjustly and intentionally interfered with SIIA's business relationship with its member.

66. By misappropriating SIIA's trade secret membership dues, Defendants unjustly and intentionally interfered with one of SIIA's economic advantages, in the form of membership dues.

67. As a result of Defendants' tortious interference with SIIA's business relationship with its members and the resulting economic advantage SIIA gains through membership dues, SIIA has been damaged in an amount to be determined at trial, including but not limited to business disruption, recruiting fees, lost business, and loss of goodwill.

68. Further, any continued or future interference with SIIA's business relationship with its members and the resulting economic advantage, will cause irreparable harm to SIIA's business operations, including through lost business opportunities and loss of goodwill.

## COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### (Against Outsell)

69. Paragraphs 1-68 above are re-alleged and incorporated as if fully set forth herein.

70. SIIA has a business expectancy that its employees will faithfully complete their job requirements without conspiring with competitors and stealing confidential information.

71. As an employee of SIIA, SIIA had this business expectancy with Marchesano beginning with Marchesano's hiring on October 14, 2013.

72. Outsell knew, or should have known, that such a business expectancy existed between SIIA and SIIA's employee, Marchesano.

73. By purposefully providing Marchesano their information and receiving SIIA's confidential information in return, without authorization from SIIA, thereby deliberately preventing the proper discharge of Marchesano's duties, Defendant Outsell unjustly and intentionally interfered with SIIA's business expectancy in Marchesano.

74. As a result of Defendant's tortious interference with SIIA's business expectancy, SIIA has been damaged in an amount to be determined at trial, including but not limited to the salary and benefits paid to Marchesano during the course Outsell's tortious interference.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgement be entered in its favor and against Defendants as follows:

a) Preliminary and permanent injunctive relief;

b) Award of monetary damages in an amount to be determined at trial;

c) Punitive damages in an amount to be determined at trial;

d) Plaintiff's costs of suit and attorneys' fees; and

e) Other and further equitable and legal relief as the Court deems fit and proper.

Date:  January 22, 2020 Respectfully submitted,

THE SOFTWARE & INFORMATION INDUSTRY ASSOCIATION

By Counsel: /s/ David Ludwig
David Ludwig (D.C. Bar No. 975891)
DUNLAP BENNETT & LUDWIG PLLC
8300 Boone Boulevard, Suite 550
Vienna, Virginia 22182
Phone: (703) 777-7319
Fax: (855) 226-8791
dludwig@dbllawyers.com
*Counsel for Plaintiff*